**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:10CR84 SNLJ(LMB) |
| ) | |
| **LEO SLAUGHTER,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The defendant, Leo Slaughter, filed his Motion to Suppress (Document #21), requesting that the court suppress all physical evidence seized from defendant on January 19, 2010. Both parties have filed memoranda regarding the defendant's motion to suppress. An evidentiary hearing was held before the undersigned magistrate judge on July 13, 2010, and this Court later permitted the defendant to represent himself in the remaining pretrial matters. Subsequent to that Order (Document #48) on September 14, 2010, defendant filed another motion to suppress pro se (Document #49), to which the government filed another response (Document #50).

### Factual Background

At approximately 4:15 a.m. on January 19, 2010, Officer Joshua Stewart of the Poplar Bluff Police Department received a report of a burglar alarm at 303 Package, a local business located at 303 South Main Street in Poplar Bluff. 303 Package sells alcohol, firearms, ammunition, tobacco, and other items, and was closed when the alarm sounded.

Officer Stewart and Officer Darren Moore separately arrived on the scene soon after the dispatch. Officer Stewart noticed a large piece of concrete block, a chair, a hat, and a partial bag of potting soil lying near the front door of the business. Officer Stewart left to check the area to

see if anyone had fled and Officer Moore remained in front of the building to secure the store and determine whether someone had entered through the front door.

Officer Stewart drove south on Main Street to the intersection of South Main and South Broadway, and turned north on Broadway to see if anybody traveled in that direction. After traveling approximately one hundred feet, Officer Stewart saw a person walking in the parking lot of an apartment building at 400 South Broadway, which is within the same block as 303 Package. The individual was wearing dark clothing, a sock hat, and glasses. Officer Stewart placed his car in reverse, and as he pulled into the parking lot to establish contact, the individual fled on foot. The individual hurdled a wall on the edge of the parking lot and traveled east on Main Street. Officer Stewart and Sergeant Kersey began searching the area for the individual, and meanwhile, Officer Moore advised Officer Stewart by radio that someone had entered 303 Package through an upper portion of the plexiglass door, and that numerous items lay scattered throughout the store.

Officer Stewart drove up a couple blocks on Broadway, looked around and began to drive south again on Main Street. As Officer Stewart was driving south on Main Street to the intersection at Broadway, he saw a black Chevy Tahoe pulling out from a parking space along the street and travel north on Broadway. With only a few minutes having elapsed since the individual fled, Officer Stewart began to follow the Chevy Tahoe. When the Tahoe turned right onto Vine Street a few blocks north, Officer Stewart could see through the back window of the vehicle that the individual was wearing glasses and a sock hat.

After the vehicle made the turn, Officer Stewart activated his emergency lights and attempted to initiate a traffic stop. The car continued to travel east on Vine toward the intersection of Main and Vine, and the driver failed to stop for the stop sign, turned right, and

2

accelerated south on Main Street.  The Tahoe reached a speed of 40 to 50 miles per hour, and Officer Stewart activated his siren and continued to pursue the vehicle south on Main street, following it around various turns, while it ran several more stop signs until the Tahoe began to slow while traveling east on Bartlett Street.  Another officer was traveling towards Tahoe with its emergency lights on, and the driver of the Tahoe exited the vehicle while it was still in motion.

The individual, wearing clothing consistent with that of the fleeing pedestrian, ran in front of the rolling vehicle and through a nearby yard of a residence.  Officer Stewart gave chase on foot and unsuccessfully attempted to use his Taser on the individual, but ultimately tackled him in the backyard of the residence.  The individual, later identified as defendant Leo Slaughter, was arrested and taken to the police station.

Officer Stewart placed the Tahoe in park for safety purposes, and the Tahoe was impounded.  The officers obtained a search warrant to search the Tahoe, and found two firearms, described as a Marlin, .30-30 rifle, bearing serial number 92037821, and a Howa, .308 caliber rifle, bearing serial number B148214.  The officers also found packs of Kool and Sonoma cigarettes, a wallet, a set of Missouri vehicle license plates and a crow bar.  A state search warrant was also obtained to get two buccal swabs from defendant.

## Discussion

Defendant argues that all physical evidence seized from his person or possession should be suppressed because: (1) Officer Stewart attempted to pull over defendant's vehicle without probable cause or reasonable suspicion; and (2) the search of defendant's vehicle was not supported by probable cause or a search warrant.

**A. Officer Stewart's Attempt to Stop Defendant's Vehicle**

Defendant argues that despite Officer Stewart's assertion that he attempted to make a traffic stop because he believed the driver to be the individual who fled earlier, Officer Stewart could not have seen defendant's details inside the Tahoe because the vehicle had tinted windows on all sides. Moreover, defendant argues, Officer Stewart's prior testimony indicated that he incorrectly identified the pedestrian as a Caucasian, and therefore his identification of the defendant was mistaken.

The Fourth Amendment protects against unreasonable searches and seizures that are the product of government action, but not every encounter between a police officer and a citizen is an unreasonable seizure under the Fourth Amendment. United States v. Drayton, 536 U.S. 194, 200 (2002). Although a warrantless seizure not based on probable cause is generally invalid, an investigatory stop—a brief seizure by police officers—is lawful if based on reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Law enforcement officers may initiate an investigatory stop if they have reasonable, articulable suspicion that a person is engaged in criminal activity. Id. at 21. "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Inarticulable hunches or generalized suspicions, however, are insufficient. Ybarra v. Illinois, 444 U.S. 85, 92-93 (1979).

Under the Fourth Amendment, a seizure of a person occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. at 19 n. 16. A "show of authority" by the government, however, does not amount to a seizure if the subject does not yield. California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547 (1991). "A police officer may make a seizure by a show of authority and without

4

the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400 (2007).

In California v. Hodari, the defendant fled when a police car approached him and a group of youths. The police officers gave chase, recovering drugs and a firearm that the defendant had tossed aside during the pursuit. The defendant filed a motion to suppress, arguing that he was seized when the officers chased him, because under the Mendenhall test, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Hodari, 499 U.S. at 627-28 (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). The Supreme Court dismissed this argument, giving the following reasoned analysis:

> We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words and beyond the meaning of arrest, as respondent urges. Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are not obeyed. Since policemen do not command "Stop!" expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their <u>genuine, successful seizures</u>.

Id. at 627 (emphasis added).

In the instant case, there was no government seizure because defendant's car never stopped when Officer Stewart turned on his emergency lights. Had Officer Stewart made the traffic stop, there would have been a closer question as to whether there was reasonable suspicion to pull defendant over. Under the present facts, however, there was nothing more than an "attempted seizure" for the purposes of the Fourth Amendment. That is not an actionable,

5

unlawful seizure according to the Supreme Court, and consequentially, reasonable suspicion was established soon thereafter when defendant began speeding away from Officer Stewart.

Assuming, arguendo, that there was a seizure when Officer Stewart turned on his emergency lights, the officer still would have had reasonable suspicion to pull over the defendant. Officer Stewart testified that he could see through the "slightly factory tinted" rear window and see that the driver of the Tahoe was the individual who had fled only minutes earlier. Officer Stewart was able to make the identification because when the driver turned his head, the officer could see the profile of a man wearing glasses and a sock cap. Defendant presented no evidence to suggest that the Officer Stewart could not see the defendant through the rear window of the Tahoe, and this Court is aware of no evidence that would rebut Officer Stewart's testimony.

Even if Officer Stewart were unable to see through the windows because they were extremely tinted, he would have had a reasonable suspicion to pull over defendant for a different reason: for violating the Missouri Statute Addressing Window Tinting, sec. 307.173 RSMo 2004. That statute states in part: "Any person may operate a motor vehicle with front sidewing vents or windows located immediately to the left and right of the driver that have a sun screening device, in conjunction with safety glazing material, that has a light transmission of 35 percent or more plus or minus three percent and a luminous reflectance of 35 percent or less plus or minus three percent." Had Officer Stewart decided that defendant's window tinting exceeded the legal threshold, which would be have been reasonable were he unable to see the driver, he would have had a reasonable suspicion to pull over the Tahoe. Officer Stewart's testimony, however, was that he could see through the Tahoe windows and was able to make out a description similar to that of the fleeing pedestrian. Thus, Officer Stewart had a sufficient reasonable suspicion to make a traffic stop.

Defendant also argues that Officer Stewart "testified that he gave a vague description of the individual he saw near the crime scene, in a state court hearing regarding this matter, indicating that he did not even know the race of the individual," which further discounts Officer Stewart's testimony. Officer Stewart's ability to see the race of the individual is not necessarily determinative to a finding of reasonable suspicion, because reasonable suspicion can be established based on other factors. Officer Stewart did not rely on the race of the defendant to draw the conclusion that the pedestrian and the driver of the Tahoe were the same individual. Officer Stewart instead relied on the identifiable articles of clothing that defendant was wearing that evening: the sock cap and the glasses. As a result, defendant's argument that Officer Stewart failed to properly identify the race of the defendant is of no consequence to the determination of the lawfulness of the <u>attempted</u> traffic stop.

**B. Search of Defendant's Vehicle**

Defendant further argues that evidence seized from his vehicle was a result of an illegal search and seizure because the search was made without a valid search warrant issued upon probable cause. Defendant argues that: (1) the search of defendant's vehicle was made without his consent; (2) the search was illegal in that it was not based upon a lawfully issued warrant or upon probable cause; and (3) any evidence obtained from defendant's vehicle was obtained in violation of defendant's due process rights, and his right to be free of unreasonable searches and seizures, in violation of the Fourth and Fifth Amendments to the United States Constitution.

Police may search an automobile or other vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband or evidence. <u>Chambers v. Maroney</u>, 399 U.S. 42, 52 (1970); <u>Carroll v. United States</u>, 267 U.S. 132, 162 (1925). The Supreme Court "has recognized significant differences between motor vehicles and other property which permit

7

warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." United States v. Chadwick, 433 U.S. 1, 12 (1977), abrogated on other grounds, California v. Acevedo, 500 U.S. 565 (1991).

This distinction is based upon the mobility of motor vehicles and diminished expectation of privacy associated with those vehicles. United States v. Alden, 576 F.2d 722, 775 (8th Cir. 1978). In such circumstances, the officers may search the entire automobile, including the trunk area, and any items or containers found in the automobile. United States v. Ross, 456 U.S. 798, 823-825 (1982). Moreover, if an automobile is lawfully in police custody, officers may conduct a search of the automobile without a warrant to inventory the property in the vehicle if such an inventory is required to be made by standard policies and procedures of the department having custody of the automobile. See Colorado v. Bertine, 479 U.S. 367, 372 (1987); South Dakota v. Opperman, 428 U.S. 364, 372 (1976).

"[R]easonable police regulations relating to inventory procedures administered in good faith satisfies the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." Bertine, 479 U.S. at 374. "In other words, '[a]s long as impoundment pursuant to community caretaking [or public safety] function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking [or public safety] motives will not invalidate the search.'" United States v. Wallace, 102 F.3d 346, 348 (8th Cir. 1996)(quoting United States v. Marshall, 986 F.2d 1171, 1175-76 (8th Cir. 1993)).

The police are required to maintain a standard and reasonable policy on impounding and searching a suspect's car and are also required to administer that policy in good faith. See United States v. Rehkop, 96 F.3d 301, 303, 305 (8th Cir. 1996)(arrest of subject stopped for traffic violations and subsequent inventory search of automobile, in which methamphetamine was found,

was proper); United States v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994)(declining to "speculate about" the law enforcement officers' subjective intent where reasonable police regulations were found to be administered in good faith); United States v. Thomas, 992 F.2d 201, 204 (8th Cir. 1993)(search of car towed to police station after subject was arrested following valid investigatory stop was pursuant to police regulations and administered in good faith); United States v. Mayes, 982 F.2d 319, 321 (8th Cir. 1993)(inventory search of car was justifiable in case in which car was parked in public lot, there was a crowd at the scene of the arrest, and the police officers testified that there was "a high likelihood" of drugs or firearms in the car).

"The Fourth Amendment is not offended if, considering the totality of the circumstances, the inventory search is reasonable." United States v. Mayfield, 161 F.3d 1143, 1145 (8th Cir. 1998)(citing Opperman, 428 U.S. at 373). "Inventory searches are reasonable when they are conducted according to standardized police procedures." Id. "Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's caretaking function. This does not mean that inventory searches are always unreasonable when standard procedures are not followed, however." Id. (internal citation omitted).

In the case at hand, defendant's Tahoe rolled to a stop in the front yard of a residence. After placing defendant in the rear of his patrol car, Officer Stewart entered defendant's vehicle, placing the car in park and turning off the engine for safety purposes. While situated in the vehicle, Officer Stewart was able to see two firearms lying in plain view on the rear passenger seat and three unopened packs of cigarettes lying on the front passenger seat. After defendant was arrested, the vehicle was impounded pursuant to department policy. A search warrant for the vehicle was issued based on an affidavit specifying the items seen by Officer Stewart in plain view, as well as a positive photo-identification of the aforementioned items by victim James Godwin.

Officer Stewart entered defendant's car without a warrant, but he was fully justified in doing so. Defendant exited the Tahoe while it was still moving, and the vehicle rolled to a stop in someone's front yard. Officer Stewart appears to have taken standard safety precautions by entering the Tahoe, placing it in park, and turning off the engine. Other than glancing about the car, he did not effect a search of the vehicle. The guns and cigarettes were all in plain view and Officer Stewart was lawfully situated in the vehicle, therefore there was no illegal search. Victim James Godwin was shown a photograph of the items in plain view as they lay in the car so that he could ascertain whether they were the stolen items from his store. There is nothing to suggest that these items could not have been viewed simply by peering through any of the windows. The officers followed proper procedure by impounding the vehicle, obtaining a search warrant, and then searching the Tahoe. Since there is no evidence to suggest that the search warrant was not based on probable cause, the search of the impounded vehicle should be considered lawful and the evidence should not be excluded.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Document #21) be denied.

### Defendant's Pro Se Motion to Suppress Witness Statements

In addition to Defendant's Motion to Suppress Evidence (Document #21) filed by his attorney, the defendant has filed pro se a supplemental motion, Defendant's Motion to Suppress Witness Statements (Document #49). As the government points out in its Response to Defendant's Pro-Se Motion to Suppress Statements (Document #50), the defendant seeks to

suppress the statements of a witness in his case, Poplar Bluff Police Officer Josh Stewart, alleging that Stewart committed perjury.  The government contends that the defendant may not suppress the statements of a witness in his case, arguing that motions to suppress evidence under Federal Rule of Criminal Procedure 12(b)(3)(C) may only be used to suppress evidence which is obtained by the police in an unconstitutional manner from the defendant.  Finally, the government argues that the defendant may not seek to suppress the statements of anyone other than himself in a motion to suppress evidence.  (Government's Response, p. 1).

As the Supreme Court stated in United States v. Salvucci, 448 U.S. 83, 86-87 (1980), a defendant has standing to challenge the admission of illegally obtained evidence only if the defendant's own constitutional rights were violated.  Defendant makes no claim that items, objects, were seized in violation of his Fourth Amendment rights or that statements were taken from him in violation of his Fifth Amendment rights.

However, Defendant's Motion to Suppress Witness Statements (Document #49) calls for some comments.  The defendant states his own conclusions (paragraph 2) that Officer Josh Stewart did not see what the driver had on on January 19, 2010, at approximately 4:15 A.M., when the defendant was stopped.  Mr. Slaughter claims that the officer was guessing that a vehicle was in the area and acted on a "hunch."  Conclusory statements are not facts.

Defendant (paragraph 3) states in a conclusory manner what he thinks the officer could see, but the only testimony in the record was that Officer Stewart testified he did see the suspect had a sock cap on and was wearing glasses.

Next, the defendant states his opinion (paragraph 4) that the officer, if he saw glasses and a hat on the suspect, had to see if the person was black or white.  That does not necessarily follow when the encounter was between two persons in different vehicles in the middle of the night.

11

Defendant states (paragraph 5) that in Stewart's testimony of February 11, 2010, given at defendant's preliminary hearing in state court, the officer testified that until the defendant was apprehended, Officer Stewart did not know whether the defendant was White, Black or Hispanic. The testimony would seem to be in conformity with Stewart's testimony on July 13, 2010, as related in defendant's paragraph 7, except that the court does not describe consistent testimony as perjurious. The testimony of February 11, 2010, is also consistent with what Mr. Slaughter argues in his paragraph 6.

If the defendant feels there is inconsistency between Officer Stewart's testimony on February 11, 2010, and July 13, 2010, at trial he can point out those alleged inconsistencies.

There being no appropriate grounds presented for the suppression of Officer Stewart's testimony,

**IT IS, THEREFORE, RECOMMENDED** that Defendant's Pro Se Motion to Suppress Witness Statements (Document #49) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of October, 2010.